VINCENT J. DOWLING, SR., ET AL. *v.* FINLEY ASSOCIATES, INC., ET AL.
(AC 16843)
(AC 16844)

O'Connell, C. J., and Spear and Sullivan, Js.

Argued March 16—officially released July 7, 1998

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellants (plaintiffs).

*R. Bartley Halloran*, for the appellees (defendants).

*Opinion*

O'CONNELL, C. J. This is the plaintiffs' consolidated appeal from judgments rendered by the trial court in two separate but related actions between the same parties. The first action was based on an investment made by the plaintiffs in a real estate project in downtown Hartford. It was commenced in 1992 when the plaintiffs Vincent J. Dowling, Sr., and Vincent J. Dowling, Jr., filed a five count complaint against the defendants George C.

Finley and Finley Associates, Inc. Counts one and two alleged violations of the Connecticut Uniform Securities Act (CUSA), General Statutes (Rev. to 1995) § 36-470 et seq.[1] Count three alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Count four alleged intentional misrepresentation, and count five alleged negligent misrepresentation. The plaintiffs sought monetary damages, rescission and interest.

The defendants filed an answer and raised special defenses based on the applicable statutes of limitation. Count one, which alleged a violation of CUSA and sought the equitable remedy of rescission, was reserved to the court. The plaintiffs withdrew count three, and the remaining counts were tried to a jury, which returned a general verdict for the defendants on January 27, 1995. On the plaintiffs' motion, a mistrial was entered as to count one on January 16, 1996, because a decision had not been rendered within the required 120 day period. See General Statutes § 51-183b.

The second action, which arose from the same facts as the first, was commenced in 1995, when the plaintiffs filed a two count complaint against the defendants, seeking indemnification of sums paid in a prior settlement.[2] The trial court granted the defendants' request to file a consolidated motion for summary judgment as to count one of the 1992 action and both counts of the 1995 action.

---

[1] In 1995, CUSA was transferred from General Statutes §§ 36-470 through 36-502 to General Statutes §§ 36b-1 through 36b-33. For purposes of this opinion, we will refer to the current designation.

[2] The plaintiffs sought and received letters of credit from the predecessor of Fleet Financial Corporation (Fleet) in order to finance their investment with the defendants. When they were unable to pay the accruing interest on the letters of credit, Fleet initiated suit to recover the amount of the letters of credit, interest thereon, costs and attorney's fees. The plaintiffs settled with Fleet.

The trial court granted the motion for summary judgment as to count one of the 1992 action, finding that the plaintiffs failed to bring their cause of action within the maximum five year limitation period established in General Statutes § 36b-29 (f).[3] The court also granted the motion as to both counts of the 1995 action, concluding that these claims were barred by the doctrine of collateral estoppel. The plaintiffs now appeal from the trial court's granting of summary judgment as to the 1995 action and count one of the 1992 action.

On appeal, the plaintiffs claim that the trial court improperly (1) determined that count one of the 1992 action was barred by the statute of limitations set forth in § 36b-29 (f) and (2) concluded that the 1995 action was barred by the doctrine of collateral estoppel. We affirm the judgment of the trial court.

I

The plaintiffs' first claim is that the trial court improperly granted summary judgment as to count one of the 1992 action on the ground that the five year time limitation set forth in § 36b-29 (f) barred the claim. The plaintiffs do not dispute that they brought the 1992 action more than five years after the alleged CUSA violation.

---

[3] General Statutes § 36b-29 (f) provides in relevant part: "No person may bring an action under this section more than two years after the date of the contract of sale or of the contract for investment advisory services, except that (1) with respect to actions arising out of intentional misrepresentation or fraud in the purchase or sale of any interest in any limited partnership not required to be registered under the Securities Act of 1933, no person may bring an action more than one year from the date when the misrepresentation or fraud is discovered, except that no such action may be brought more than five years from the date of such misrepresentation or fraud provided, with respect to an action pending on July 1, 1993, that asserts facts upon which a claim could be asserted under this section on and after July 1, 1993, and which claim is asserted prior to January 1, 1994, no such action may be brought for intentional misrepresentation or fraud that occurred more than five years prior to the date of the filing of the complaint in such action . . . ."

The plaintiffs contend, however, that because count one seeks an equitable remedy, the time limitation is not applicable to it. We are not persuaded.

The plaintiffs rely on the principle that "[a]lthough courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations." *Dunham* v. *Dunham*, 204 Conn. 303, 326–27, 528 A.2d 1123 (1987).

Count one of the 1992 action alleged that the defendants held themselves out as financial consultants, sold securities to the plaintiffs without being registered as broker-dealers and concealed the fact that they were receiving a sales commission in connection with the plaintiffs' investment, all in violation of CUSA. General Statutes § 36b-29 (a)[4] enables a party to seek private enforcement for such violations, and § 36b-29 (f) sets forth a maximum time limitation of five years for bringing such an action.[5]

---

[4] General Statutes § 36b-29 (a) provides in relevant part: "Any person who: (1) Offers or sells a security in violation of subsection (a) of section 36b-6 . . . or (2) offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security."

General Statutes § 36b-6 provides in relevant part: "(a) No person shall transact business in this state as a broker-dealer unless he is registered under sections 36b-2 to 36b-33, inclusive. . . ."

[5] See footnote 3.

Although the plaintiffs sought equitable relief in count one, they are not exempt from the time limitations set forth in § 36b-29 (f) because their cause of action was brought pursuant to § 36b-29 (a). Where a party seeks equitable relief pursuant to a cause of action that would also allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would be applicable to bar the legal claim also applies to bar the equitable claim. *Swan* v. *Board of Higher Education*, 319 F.2d 56, 59–60 n.5 (2d Cir. 1963); see also *Cope* v. *Anderson*, 331 U.S. 461, 463–64, 67 S. Ct. 1340, 91 L. Ed. 1602 (1947); *Russell* v. *Todd*, 309 U.S. 280, 289, 60 S. Ct. 527, 84 L. Ed. 754 (1940); *Williams* v. *Walsh*, 558 F.2d 667, 671 (2d Cir. 1977); 2 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941), § 419e, pp. 180–81. This principle has long been recognized in Connecticut. See *Arrigoni* v. *Adorno*, 129 Conn. 673, 681, 31 A.2d 32 (1943); *Crittendon* v. *Brainard*, 2 Root (Conn.) 485, 487 (1796); *Campbell* v. *Board of Education*, 36 Conn. Sup. 357, 364 n.5, 423 A.2d 900 (1980).

In the present case, the underlying cause of action on which the plaintiffs seek equitable redress is an alleged violation of CUSA. This cause of action affords both legal and equitable relief. General Statutes § 36b-29 (a). As noted, equity follows the law under these circumstances. *Arrigoni* v. *Adorno*, supra, 129 Conn. 681; *Campbell* v. *Board of Education*, supra, 36 Conn. Sup. 364 n.5. Therefore, because the plaintiffs filed their complaint more than five years after the alleged CUSA violation, the trial court properly determined that count one of the 1992 action was barred by the statute of limitations set forth in § 36b-29 (f).

II

The plaintiffs' second claim is that the trial court improperly granted summary judgment as to the 1995

indemnification action on the ground that pursuant to the doctrine of collateral estoppel, the jury verdict in favor of the defendants in the 1992 action bars the litigation of the issues raised in the 1995 action. The plaintiffs assert that collateral estoppel does not apply in this case because (1) a final judgment has not been entered in the 1992 action and (2) collateral estoppel cannot be applied in cases of general verdicts.

Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. *Crochiere* v. *Board of Education*, 227 Conn. 333, 343, 630 A.2d 1027 (1993). " 'For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action.* It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.' " (Emphasis in original.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 600, 674 A.2d 1290 (1996). " 'To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding.' " *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991).

The plaintiffs first argue that collateral estoppel does not apply here because there will be no final judgment in the 1992 action if this court reverses the judgment of the trial court as to count one of the 1992 action and remands for further proceedings. This argument is without merit. In part I of this opinion, we considered and declined to reverse the 1992 judgment. Accordingly, the 1992 judgment is final.

The plaintiffs next argue that collateral estoppel cannot be applied in cases of general verdicts because it

is not possible to ascertain on which facts the jury relied. We do not agree.

In the 1992 action, three counts were submitted to the jury. Each count alleged that the defendants had violated the plaintiffs' legal rights and had caused damages to the plaintiffs as a result. In their answer, the defendants denied the plaintiffs' claims of liability and damages. The defendants also pleaded special defenses to each count on the basis of the applicable statute of limitations. The jury rendered a general verdict in favor of the defendants on all three counts.

"Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels." (Citations omitted; internal quotation marks omitted.) *Gajewski* v. *Pavelo*, 229 Conn. 829, 836, 643 A.2d 1276 (1994); *Rogers* v. *Northeast Utilities*, 45 Conn. 23, 25, 692 A.2d 1301, cert. denied, 241 Conn. 924, 696 A.2d 1266 (1997). "A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury." *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993).

Our Supreme Court has held that the general verdict rule applies to the following five situations: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a

specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." Id., 801; *Fabrizio* v. *Glaser*, 38 Conn. App. 458, 461, 661 A.2d 126 (1995), aff'd, 237 Conn. 25, 675 A.2d 844 (1996). The 1992 action falls under the fourth situation.

We are aware of no authority for the proposition that the general verdict rule does not apply when collateral estoppel is raised at the trial level. The plaintiffs' reliance on *Griffin* v. *Parker*, 219 Conn. 363, 593 A.2d 124 (1991), is misplaced.

The plaintiff in *Griffin* sought to recover for personal injuries he sustained when he was shot by the defendant. In connection with that shooting, the defendant had been convicted by a general verdict of assault in the first degree under two statutory subdivisions, one applicable to intentional conduct and the other applicable to reckless conduct. The court held that the defendant was not collaterally estopped from litigating the issue of whether the assault was intentional because the general verdict in the prior criminal action was inconsistent. Id., 370–71. The court concluded that "[b]ecause the defendant could not simultaneously have had mutually exclusive states of mind, there remains a question of fact as to which state of mind he did have." Id., 371. In contrast to *Griffin*, the factual findings of the jury in the present case are not mutually exclusive. A plaintiff may both fail to bring an action within the time required by the applicable statute of limitations and fail to prove liability.

Moreover, jury interrogatories are not part of criminal procedure. *State* v. *Lewis*, 46 Conn. App. 691, 696, 700 A.2d 722, cert. denied, 243 Conn. 944, 704 A.2d 799 (1997). Accordingly, a criminal defendant has no way to clarify a general verdict. Because the 1992 action was a civil case, however, the plaintiffs could have

requested interrogatories to clarify whether the jury found for the defendants on either the liability issue, the statute of limitations defense or both. Because the plaintiffs did not do so, the general verdict rule applies, and this court must presume that the jury found both issues in favor of the defendants. *Gajewski* v. *Pavelo*, supra, 229 Conn. 836.

The trial court properly determined that the 1995 action was an attempt by the plaintiffs to relitigate issues already litigated in the 1992 action. Both complaints have identical parties and are premised on the same underlying facts regarding a purchase of securities by the plaintiffs in which the defendants allegedly misrepresented their role and induced the plaintiffs to make the purchase. The general verdict in favor of the defendants demonstrates that every issue raised in the 1992 complaint was in fact litigated, and the jury found in favor of the defendants on each issue.

The judgment is affirmed.

In this opinion the other judges concurred.